**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARLON BRUFF | : | |
| | : | |
| | : | |
| v. | : | Crim. No. CCB-07-0395 |
| | : | (Civil No. CCB-12-1630) |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |

**MEMORANDUM**

Marlon Bruff is serving a 132-month sentence in the custody of the United States Bureau of Prisons after pleading guilty to conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 and conspiracy to launder money in violation of 18 U.S.C. § 1956(h). He now challenges that sentence through a motion brought under 28 U.S.C. § 2255. He primarily alleges that his counsel's representation was constitutionally inadequate, and that his guilty plea is invalid. No hearing is necessary to resolve this motion. *See* 28 U.S.C. § 2255(b). For the reasons explained below, Bruff's motion will be denied.

**BACKGROUND**

Pursuant to a plea agreement, Bruff pleaded guilty on June 19, 2009, to conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine and conspiracy to launder money. (*See* Plea Agreement 1, ECF No. 113; Plea Tr. 3, ECF No. 170.) After conducting a plea colloquy that confirmed, among other things, the nature of the charges Bruff was pleading to, (Plea Tr. 4-6); the "possible penalties" of his plea, (*id.* at 6-7); his right to a jury trial (*id.* at 9-10); the facts stipulated to in his plea agreement, (*id.* at 12-13)[1]; and his

---

[1] The plea agreement included the stipulation that "based on all the facts readily provable by the Government, the Defendant . . . conspired to distribute more than 15 kilograms of methamphetamine." (Plea Agreement 5.)

1

satisfaction with his counsel's representation, (*id.* at 16-17), the court accepted Bruff's plea of guilty on both counts, (*id.* at 18-19).

Two months later, Bruff informed the court, through a letter from his counsel, that he no longer believed he should be held responsible for the more than fifteen kilograms of methamphetamine that he had stipulated to in the plea agreement. (Aug. 20, 2009 Letter, at 1, ECF No. 123.) In another letter a month later, Bruff again noted his belief that the government could not prove that over fifteen kilograms of methamphetamine was attributable to him. (Oct. 30, 2009 Letter, at 1, ECF No. 131.)[2] He did not move to withdraw his guilty plea.

On November 5, 2009, Bruff appeared for sentencing. (*See* ECF No. 136.) Even though Bruff's counsel believed Bruff's stipulations foreclosed argument on the quantity issue, he nonetheless attempted to advance the arguments forecast in the earlier letters. (*See* Sentencing Tr. 4-5, ECF No. 169.) Recognizing Bruff's hesitance, the court informed Bruff on several occasions about his option to move to withdraw the guilty plea if he did not agree to proceed under the facts admitted to in his plea agreement, which included the type and quantity of the drugs involved in the conspiracy. (*See, e.g.*, *id.* at 5.) Bruff affirmed he wanted to proceed. (*Id.* at 20.) When he then voiced his concern that he had not known that methamphetamine and Ecstasy[3] were different drugs (*id.* at 22), the court again asked whether he was attempting to withdraw his guilty plea, (*id.* at 25). After a brief recess for Bruff to decide he was "comfortable going ahead[,]" (*id.* at 26-27), Bruff confirmed he still wanted to proceed, (*id.* at 28).

Based in part on the stipulations in the plea agreement, the court calculated that the

---

[2] Specifically, Bruff proffered that (1) "he had no knowledge that any methamphetamine was involved in the conspiracy at all"; (2) based on the laboratory reports, the government had not seized fifteen kilograms of methamphetamine; and (3) he was not involved with drug transactions in January through May of 2007. (*Id.*)
[3] "Ecstasy" is the street name for 3,4 methylenedioxymethamphetamine, which is also known as "MDMA."

2

Sentencing Guidelines advised a term of imprisonment of between 168 and 210 months. (*Id.* at 34.) When the court turned to the factors listed in 18 U.S.C. § 3553(a), Bruff's counsel asserted as mitigation the points Bruff had raised earlier, including his belief he was "dealing in Ecstasy" instead of methamphetamine, (*id.* at 41); his disagreement with the fifteen-kilogram quantity stipulated to in the plea agreement, (*id.*); and his nonparticipation in the conspiracy from January to May of 2007, (*id.* at 35). The government explained the evidentiary basis for the quantities it had proffered and that had been stipulated to in the plea agreement. (*See id.* at 64-66.) The court noted that the quantity hearing for Bruff's codefendant, Bum Gu Kim, had substantiated those quantities. (*Id.* at 67.) After considering all of the relevant factors, the court varied from the Guidelines and imposed a sentence of 132 months. (*Id.* at 88.)

Bruff appealed his sentence. (*See* Notice of Appeal, ECF No. 138.) He argued ineffective assistance of counsel regarding the circumstances leading to his guilty plea. *United States v. Bruff*, 414 F. App'x 539, 540 (4th Cir. 2011) (per curiam). The Fourth Circuit affirmed, concluding that his claim was "not yet ripe for review and [wa]s better suited to be raised in a § 2255 proceeding." *Id.* Bruff timely filed this motion on June 1, 2012.

## ANALYSIS

### I. Ineffective Assistance of Counsel

Although Bruff asserts that his counsel's performance was deficient in almost two dozen ways, (*see* Pet.'s Mot. Vacate 5-6, ECF No. 227), the gist of his allegations is that his counsel provided "erroneous advice" that led him to mistakenly plead guilty to conspiracy to distribute methamphetamine when, in fact, he thought he was pleading guilty to conspiracy to distribute Ecstasy. (*Id.* at 5.) Specifically, Bruff alleges his counsel "failed to properly advise" him about

the plea agreement's "conspired drug names, quantities, and penalties." (*Id.*) Further, his counsel "misle[d]" him into believing that "methamphetamine" and "Ecstasy" were the same drug. (*Id.*) Had he known that the two drugs were actually different, he would not have pleaded guilty and would have instead insisted on going to trial.

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a plea bargain, that standard requires proof of "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Although the present record does not clarify one way or another whether Bruff has shown deficient performance,[4] Bruff clearly fails to show prejudice, and that is fatal to his claim. *See Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing *Strickland*, 466 U.S. at 697) ("If the defendant cannot demonstrate the requisite prejudice, a reviewing court

---

[4] The record sheds little light on Bruff's discussions with his counsel during the plea negotiation process. The court notes, however, that many of his allegations are belied by the sworn statements he made during his plea colloquy. The court confirmed that Bruff was, among other things, "completely satisfied with the representation of [his] attorney[,]" and that there was nothing "h[is counsel] should have done that he ha[d]n't done" or "anything else [Bruff] need[ed] to ask him about" before entering his plea. (Plea Tr. 16-17.) These affirmations create a heavy burden for Bruff to overcome to show deficient performance. *See United States v. Dyess*, 478 F.3d 224, 240 (4th Cir. 2007) ("[T]he defendant expressed satisfaction with his attorney during the colloquy; this statement of fact cannot be so easily repudiated." (citing *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992))).

need not consider the performance prong."). As evidence of prejudice, Bruff alleges that, had he known that he was pleading guilty to something other than Ecstasy, he would have invoked his trial right, apparently on the belief that the government did not have sufficient evidence to prove its case as to anything but Ecstasy. Specifically, he believes that, because he had no knowledge that *methamphetamine* was ever involved in the charged conspiracy, the government would be unable to prevail at trial on a count respecting that drug.

This argument is not persuasive. Even assuming, as Bruff states, that he did not know that methamphetamine was involved in the conspiracy, that fact would not have altered his likelihood of prevailing at trial because the Fourth Circuit recognizes the "long-standing rule that the government need only prove that the defendant knew he was distributing *some controlled substance*." *United States v. Brower*, 336 F.3d 274, 276 n.1 (4th Cir. 2003) (emphasis added). In other words, the government would not have to prove that Bruff "knew the exact nature of the substance he distributed." *Id.* at 275.[5] Bruff readily admits his knowledge that the conspiracy involved Ecstasy, which is a controlled substance.[6] That would be enough.

Bruff also appears to make the slightly different argument that he did not know that the conspiracy's *objective* was anything other than to distribute Ecstasy. To emphasize this point, Bruff submits the declarations and affidavits of several codefendants, each of whom attests to the conspiracy's objective. (*See* Pet.'s Mot. Vacate Ex. 24 (Bum Gu Kim, Marlon Roberts, and Danbert Johnson each attesting that "'Ecstasy' was the topic and object of my part in the conspiracy").)[7] Again, even assuming the conspiracy was created with the sole aim of

---

[5] Bruff's contrary allegation—though it may be entirely sincere—is premised on a misunderstanding of the law. Bruff appears to believe that, were he to go to trial, the government would have to prove that Bruff knew the conspiracy involved the *specific type of drug* he is charged with conspiring to distribute—that is, methamphetamine.
[6] Bruff does not appear to argue that he did not know that Ecstasy was a controlled substance.
[7] The exhibits to Bruff's motion were filed separately and are not available on ECF.

distributing Ecstasy, that fact would not have altered the government's burden. A conspiracy charge under 21 U.S.C. § 846 takes the mens rea requirement of the underlying offense, which, in this case, is 21 U.S.C. § 841(a)(1). *See United States v. Feola*, 420 U.S. 671, 686 (1975) ("[I]n order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." (citation omitted)). And, as already noted, that section requires only the "specific intent to distribute *a controlled substance* . . . ." *United States v. Ali*, 735 F.3d 176, 186 (4th Cir. 2013) (emphasis in original)[8]. Bruff agrees that he conspired to distribute Ecstasy. (*See, e.g.*, Pet.'s Reply Ex. 1, Bruff Decl. 10, ECF No. 236-1 (Bruff stating that he "knew he was guilty for conspiring to distribute Ecstasy (MDMA)").) That, again, would be sufficient.[9]

Bruff points to a final distinction between an Ecstasy charge and a methamphetamine charge, which is that the latter carries a mandatory minimum sentence of ten years. *See* 21 U.S.C. § 841(b)(1)(A). Even if this is so, Bruff's own actions belie any reasonable probability that he would have insisted on going to trial. All along, Bruff admitted he "knew he was guilty for conspiring to distribute Ecstasy (MDMA) and did not want to go to trial for Ecstasy seeing as though he knew he was guilty of it." (Bruff Decl. 10; *see also* Sentencing Tr. 6 (counsel stating that "[Bruff] has made it really clear that he understands that he is in fact guilty of conspiracy."); *id.* at 7 ("[Bruff] readily admits it was Ecstasy he was involved with.").) Bruff affirmatively wanted to plead guilty to Ecstasy. Before he entered his guilty plea (on methamphetamine), he

---

[8] The Fourth Circuit affirmed a jury instruction that required the government to prove "that a defendant knew that what he or she had conspired to distribute or to possess with intent to distribute contained a substance that is illegal under the U.S. drug laws . . . ." *Id.* at 185.

[9] The record reflects that Bruff's counsel conveyed these legal principles to Bruff, (*see, e.g.*, Sentencing Tr. 6-7 ("I have advised [Bruff] repeatedly that whether he knew the contents of the specific drug that he was conspiring to distribute is not relevant under applicable Fourth Circuit jurisprudence.")), which further undermines his repeated allegations of ineffective assistance.

knew that the count he was charged with included "a mandatory minimum sentence of ten years . . . ." (Plea Agreement 2; *see also* Plea Tr. 6 ("Now do you understand that . . . [t]here's a mandatory minimum sentence of ten years.").) Thus, at the time, he believed (incorrectly) that the ten-year mandatory minimum was associated with an *Ecstasy* charge. Despite that understanding, he nonetheless entered his guilty plea.[10]

In sum, none of the alleged distinctions between a methamphetamine and Ecstasy charge that Bruff points to would have been material to his decision to plead guilty. Accordingly, the court concludes that Bruff has not shown a "reasonable probability" that, had his counsel not erred—that is, had his counsel properly explained the differences between Ecstasy and methamphetamine, and the consequences of going to trial on either charge—he would have insisted on going to trial.[11,12]

**II. Invalid Guilty Plea**

Bruff also alleges that he did not "knowingly and intelligently" enter his guilty plea because he was neither "aware of the true nature of the charges against him" nor "advised [of] the true elements of the offense [to] which he plead[ed] guilty." (Pet.'s Mot. Vacate 8.) "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely

---

[10] Moreover, the record reflects little real possibility that he could have achieved a sentence of less than ten years in his case. Based on the amount of Ecstasy involved in the conspiracy, and the evidence the government had marshaled, (*see* Sentencing Tr. 61-66), Bruff's base offense level likely would have been thirty-eight, which is equal to the base offense level he actually began with on the methamphetamine charge, (*see id.* at 2-4).

In his plea agreement, Bruff stipulated that the government recovered "tally" sheets showing that the conspiracy involved shipments of "approximately 800,000 units of MDMA . . . ." (Plea Agreement 5.) Under U.S.S.G. § 2D1.1(c)(1), 800,000 units of MDMA is equivalent to 200,000 grams of MDMA, which in turn is equivalent to 100,000,000 grams of marijuana. That amount is more than 3.3 times the quantity needed to reach a base offense level of thirty-eight. Thus, even accepting Bruff's arguments that he played a minor role, and that not all of the drugs involved in the conspiracy were attributable to him, his base offense level likely would have been the same—and would have advised a sentence of longer than ten years.

[11] Again, the court does not conclude that counsel in fact erred. It is not necessary to decide that issue.

[12] The court has considered Bruff's other allegations of ineffective assistance and concluded they lack merit.

7

consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal citation and quotation marks omitted). For a guilty plea to be voluntary, the defendant must understand "the true nature of the charge against him." *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (citation and internal quotation marks omitted); *see also* Fed. R. Crim. P. 11(b) (outlining the requirements for the court to accept a guilty plea). Bruff's guilty plea was valid under this standard.

Bruff's allegations are plainly contradicted by the plea colloquy record, which is replete with instances in which the court (and his counsel) confirmed his understanding of the full scope and terms of his plea agreement. At several points during the plea colloquy, the court confirmed that Bruff knew he was pleading "specifically to . . . 500 grams or more of methamphetamine." (Plea Tr. 4-5; *see also, e.g.*, *id.* at 12 ("[Y]ou are pleading guilty to . . . the conspiracy to distribute 500 grams or more of methamphetamine . . . .").) The court also confirmed Bruff's understanding that the Statement of Facts he had stipulated to related to both "the illegal conspiracy to distribute and possess with intent to distribute Ecstasy, *including methamphetamine*"[13] and the "evidence that [Bruff] and other members of the conspiracy conspired to distribute more than 15 kilos of methamphetamine." (*Id.* at 12-13 (emphasis added).) Thus, the record reflects he understood the specific charge, the specific drug, and the specific quantity to which he was pleading guilty.

Part of Bruff's argument, of course, is that he was unaware of the distinction between Ecstasy and methamphetamine when he entered his guilty plea; because he learned of that distinction only *after* he had entered his plea, any representations made during his plea colloquy were necessarily invalid. Even assuming Bruff did not know the distinction when he entered his

---

[13] That the court distinguished between "Ecstasy" and "methamphetamine" undermines Bruff's repeated allegation that he did not know the two were, in fact, different drugs.

plea, Bruff's subsequent conduct confirms the knowing and voluntary nature of that plea. After he had apparently learned of the crucial distinction between the two drugs, Bruff had multiple chances (at sentencing and otherwise) to move to withdraw his plea, but never did so.

If anything, the record shows Bruff made a conscious and considered decision to proceed under the plea he had (allegedly mistakenly) entered earlier. Indeed, at the beginning of the sentencing hearing, Bruff's counsel raised the quantity arguments he had previewed in his earlier letters to the court. The court responded that, if Bruff did not want to proceed on the basis of the guilty plea he had entered, he could move to withdraw it. (*See* Sentencing Tr. 4-5.) Bruff's counsel then confirmed that, after having had several conversations about that possibility, Bruff had "made it abundantly clear . . . he was not interested in attempting to" withdraw his plea. (*Id.*) The court then asked Bruff if he "prefer[red] to go forward with [the guilty] plea rather than withdraw it[,]" to which Bruff responded yes. (*Id.* at 20.) Bruff then described the apparent confusion on his part that had permeated the plea negotiations: he "didn't really know what methamphetamine was"—he had confused methamphetamine with MDMA, which is formally "called methylenedioxy or something like that . . . ." (*Id.* at 22.) In light of Bruff's statements, the court again paused to confirm that Bruff understood the "basics" of the situation. (*Id.* at 24-25.) The court explained that "[t]here is a distinction . . . between the amount attributable to the entire conspiracy and what [Bruff] m[ight] want to argue by way of mitigation [he] w[as] actually personally responsible for," but that that was "different from being legally responsible for the larger quantity." (*Id.* at 25.) The court then asked again whether Bruff wanted to proceed on the basis of the plea agreement and its stipulations, or whether he wanted to move to withdraw his guilty plea. (*Id.*) Because the court "need[ed] to know that [Bruff] [was]

comfortable going ahead[,]" the court took a recess so that Bruff could speak to his counsel. (*Id.* at 26-27.) On resuming the hearing, Bruff's counsel confirmed that Bruff "d[id] not wish to withdraw his plea" and "want[ed] to go forward with the proceeding . . . ." (*Id.* at 28.) After the court asked Bruff if he agreed with counsel, Bruff said "yes, yes." (*Id.*)

Because "absen[t] extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established," and because Bruff has shown nothing rebutting that presumption,[14] his allegations that he did not "knowingly and intelligently" enter into his plea agreement are "palpably incredible" and thus will be summarily dismissed. *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citation and internal quotation marks omitted); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." (citations omitted)); *White*, 366 F.3d at 297 (noting that summary dismissal of petitioner's allegations is warranted only if they are "palpably incredible" or "patently frivolous or false" in light of the record (quoting *Blackledge*, 431 U.S. at 76)).

### III. Other Grounds

Bruff also asserts that: (1) the court abused its discretion; (2) the government committed prosecutorial misconduct, and (3) his counsel and the government perpetrated fraud on the court. After considering the entire record, the court concludes that these grounds lack merit.

### IV. Certificate of Appealability

After a district court denies the entirety of a motion under 28 U.S.C. § 2255, a prisoner

---

[14] Bruff has not shown "extraordinary circumstances" warranting an evidentiary hearing here. *Cf. United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (holding that admittedly ineffective representation that concededly rendered a guilty plea involuntary presented extraordinary circumstances warranting evidentiary hearing).

may only appeal that decision if a "judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B); *see also* Fed. R. App. P. 22(b)(1). Accordingly, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing Section 2254 & 2255 Proceedings in the United States District Courts.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court rejects a prisoner's claims on the merits, that standard is met if the prisoner "demonstrate[s] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). Bruff's claims do not meet this standard.

## CONCLUSION

For the reasons stated above, Bruff's motion under § 2255 will be denied and a certificate of appealability will not issue.

A separate order follows.

September 1, 2015             /S/
Date                          Catherine C. Blake
                              United States District Judge